## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| CX REINSURANCE COMPANY LTD., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO.  JKB-15-3054 |
| LEADER REALTY COMPANY *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

### *I.  Background*

This case was brought by CX Reinsurance Company Limited ("CX Re") against Leader Realty Company and Charles Piccinini.  The complaint was filed October 7, 2015.  (ECF No. 1.) Before any responsive pleading or motion was filed, CX Re filed an amended complaint adding Leader, Inc., as a party defendant [1] and refining its allegations.  (ECF No. 14.)  Generally, CX Re alleges Defendants own and operate various residential rental properties in Baltimore, Maryland, and that Defendants applied for liability insurance to protect Defendants and other insureds against loss based upon tenants' claims for bodily injury and property damage.  CX Re also alleges that Defendants, in filling out the insurance applications, gave a false answer of "No" to the question of whether any of Defendants' properties had been cited for lead-paint violations; in fact, Defendants' properties had received numerous citations for lead-paint problems.  Thus, CX Re seeks damages for fraud and the equitable remedy of rescission.  (*Id.*)

---

[1] In motion papers, Defendants note that CX Re "has separately named and served both 'Leader, Inc.' and 'Leader Realty Company' as defendants in this lawsuit.  The latter entity, however, is simply a trade name of the former."  (Defs.' Mot. Dismiss 1, ECF No. 18.)  CX Re has not contradicted this statement, and the Court will direct the Clerk to amend the docket accordingly.

Pending before the Court are several motions, two of which are addressed in this opinion; others will be addressed in a separate opinion. The motions decided herein are Defendants' motion to dismiss or, in the alternative, for summary judgment (ECF No. 18) and CX Re's motion for leave to file a second amended complaint (ECF No. 30). The motions have been briefed (ECF Nos. 19, 28, 31, 35), and no hearing is required, Local Rule 105.6 (D. Md. 2016). Defendants' motion will be denied and CX Re's motion will be granted.

## II.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## IV. Analysis

Defendants' motion is narrowly focused on their argument that the suit before the Court is barred by the statute of limitations and by laches. They do not otherwise assert entitlement to dismissal based upon a failure to state a claim for relief or an entitlement to summary judgment.

Both sides agree that the allegedly material misrepresentation was made on an insurance application dated July 11, 1997. (Defs.' Mot. Supp. Mem. 2, ECF No. 19; Pl.'s Opp'n 1, ECF No. 28.) They also agree that the applicable statute of limitations is three years from the date of the wrong. (Defs.' Mot. Supp. Mem. 1; Pl.'s Opp'n 6.) Defendants contend CX Re has failed to

plead with particularity facts supporting a theory that CX Re's belated discovery of the misrepresentation was prevented by Defendants' fraudulent conduct; thus, they contend they are entitled to dismissal for failure to state a claim for relief.  (Defs.' Mot. Supp. Mem. 1-2.) Defendants alternatively argue they are entitled to summary judgment because evidence outside of the complaint shows that CX Re learned about the alleged misrepresentation earlier than three years before suit was filed.  The Court first addresses Defendants' argument under Federal Rule of Civil Procedure 12(b)(6).

Normally, an affirmative defense such as statute of limitations or laches must be raised by a defendant, who bears the burden of establishing the defense.  *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  Consequently, a motion to dismiss under Rule 12(b)(6) is ordinarily not the proper vehicle for testing the validity of an affirmative defense.  *Id.*  However, an exception to that rule arises when "all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'"  *Id.* (alteration in original; citations omitted).  Even so, Defendants' argument incorrectly suggests that a plaintiff has a duty to plead facts to negate affirmative defenses.  A plaintiff is only required under Rule 8(a) to state a claim for relief, not to state also why affirmative defenses do not apply.  Nevertheless, it may well behoove a plaintiff to anticipate an affirmative defense and plead accordingly.

CX Re's amended complaint (referred to hereinafter as the "complaint") alleges it "only recently discovered the [lead-paint] violations and the misrepresentation on the Application" (Am. Compl. ¶ 27) and further alleges it "[p]romptly after learning of and investigating Leader Realty's misrepresentation of material fact on the Application, . . . filed this rescission action" (*id.* ¶ 37).  Defendants contend dismissal is warranted because CX Re did not comply with the

"particularity" pleading standard of Rule 9(b), which they say applies to the fraudulent concealment doctrine purportedly invoked by CX Re.  Their contention is without merit.

Defendants rely upon a Maryland statute, which provides, "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."  Md. Code Ann., Cts. & Jud. Proc. § 5-203 (LexisNexis 2013). CX Re does not allege that Defendants fraudulently kept CX Re from discovering the misrepresentation; thus, it is not relying upon the fraudulent concealment doctrine and, therefore, does not need to plead particular facts supporting application of that doctrine.  Instead, CX Re's complaint simply invokes the "discovery rule."  *See Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 722-24 (D. Md. 2014) (distinguishing between fraudulent concealment doctrine embodied in § 5-203 and common-law discovery rule).  The discovery rule applies generally in all civil actions brought pursuant to Maryland state law, and it provides that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong."  *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981).

The Court is required under governing precedent to construe factual allegations in the light most favorable to a plaintiff and to draw all reasonable inferences in a plaintiff's favor when judging the sufficiency of a complaint.  *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).  Applying that standard, the Court concludes CX Re has plausibly pled it discovered Defendants' alleged misrepresentation within three years of filing the instant suit.  Thus, it is not barred by either the statute of limitations or laches.  *See Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 985-86 (Md. 2000) ("When a case involves concurrent legal and equitable remedies, 'the applicable statute of

limitations for the legal remedy is equally applicable to the equitable one.'"").   As a result,

Defendants' motion, construed as one to dismiss for failure to state a claim under Rule 12(b)(6),

will be denied.

Alternatively, Defendants assert they are entitled to summary judgment because evidence

beyond the complaint's allegations shows CX Re discovered in the Spring of 2012 the falsity of

Defendants' answer about the nonexistence of lead-paint violations in their properties.   (Defs.'

Mot. Supp. Mem. 3-4.)   Thus, since CX Re did not file suit until October of 2015, Defendants

contend CX Re waited too late and its suit is barred.   Defendants' argument depends upon the

type of "notice" that suffices under the discovery rule.   As the Court will explain, Defendants'

second argument is also without merit.

Defendants provide evidence to support their argument, and CX Re does not disagree

with the basic facts emanating from that evidence.   The parties differ, however, in their

interpretations of the consequences flowing from that evidence.   For simplicity's sake, the Court

will generally rely upon the facts as stated in Defendants' supporting memorandum and its

exhibits. (*Id.* 3-5.)

In 2011, Defendants were sued in the Circuit Court of Baltimore City in a personal injury

case by a former tenant of one of their residential properties.   The tenant alleged he suffered

bodily injury due to exposure to lead paint.   CX Re's claims administrators, PRO IS, Inc., and

Lincoln General Insurance Company, who were located in York, Pennsylvania, accepted

Defendants' claim and secured outside counsel located in Towson, Maryland, to defend the suit.

(*Id.* and Ex. 1, Ex. 2.)   On April 30, 2012, outside counsel sent to the claims administrator a

summary of the lead-paint plaintiff's discovery responses.   (*Id.* Ex. 3.)   Included within that

summary was the following statement:   "The insured received a Lead Paint Violation Notice on

June 25, 1997 from the Baltimore City Health Department." (*Id.*)  (The Court notes that is less than a month before Defendants' application to CX Re stated they had received no lead-paint violations for their properties.)  The claims administrator also received additional reports from outside counsel in which the latter noted the lead-paint violations.  (Ex. 4, Ex. 5.)

From this evidence, Defendants argue CX Re "was on notice of the falsity of the alleged representation on which its claims are based more than three years before it filed this lawsuit." (Defs.' Mot. Supp. Mem. 9.)  They contend that notice to the claims administrator constituted notice to CX Re.  Only in their reply do they provide any case citations to flesh out their theory as to why the preceding evidence defeats CX Re's invocation of the discovery rule.  But none of their cited authorities persuades the Court that the notice to a third-party claims administrator in 2012, as occurred here, sufficed as the requisite notice to CX Re to start the clock running on the statute of limitations.

The Maryland Court of Appeals has specifically addressed the nature of the knowledge necessary to trigger this time period.  Quoting *Baltimore v. Whittington*, 27 A. 984, 985 (1893), the *Poffenberger* court distinguished between actual notice and constructive notice:

> Notice is of two kinds -- actual and constructive.  Actual notice may be either express or implied.  If the one, it is established by direct evidence, if the other, by the proof of circumstances from which it is inferable as a fact.  Constructive notice is, on the other hand, always a presumption of law.  Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated.  Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact.  . . . It is simply circumstantial evidence from which notice may be inferred.  It differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, in respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, resting upon strictly legal presumptions which are not allowed to be controverted, whilst implied notice arises from inference of *fact*.

431 A.2d at 680 (internal quotation marks omitted).

The *Poffenberger* opinion specifically referred to imputed knowledge as constructive notice and held that type of notice "does not constitute the requisite knowledge within the meaning of the [discovery] rule." *Id.* at 681. This point has been reaffirmed in Maryland cases. *See, e.g.*, *Windesheim v. Larocca*, 116 A.3d 954, 963 (Md. 2015) ("Constructive notice is notice presumed as a matter of law. Unlike inquiry notice, constructive notice does not trigger the running of the statute of limitations under the discovery rule."). *See also Dominion Nat'l Bank v. Sundowner Joint Venture*, 436 A.2d 501, 511 (Md. Ct. Spec. App. 1981) ("Constructive notice (or knowledge) is a legal fiction; it is a useful and perhaps a necessary fiction, but it is a fiction nevertheless. It presumes as fact that which is not fact . . . .").

Defendants contend the notice of the lead-paint violations to the third-party claims administrator in the Spring of 2012 is imputed to the principal, *i.e.*, CX Re, therefore triggering the discovery rule more than three years before CX Re's suit was filed. Defendants rely upon an opinion by the United States Court of Appeals for the Fourth Circuit, *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768 (4th Cir. 1995), which stated in a footnote, "Under the general rule, the knowledge imputed to the principal is considered actual knowledge, not constructive." *Id.* at 773 n.4. In turn, the *Martin Marietta* Court relied upon a footnote in *Plitt v. Kellam*, 160 A.2d 615, 619 n.4 (Md. 1960), which stated, "The knowledge imputed to the principal is considered actual knowledge." *See also Lohmuller Bldg. Co. v. Gamble*, 154 A. 41, 43-44 (Md. 1931) (referring to knowledge of agent as imputed knowledge to principal). To the extent *Plitt* may be interpreted as equating actual notice sufficient to trigger the discovery rule with knowledge imputed to a principal based upon knowledge possessed by an agent, *Poffenberger* implicitly overruled *Plitt*,

8

well before *Martin Marietta* was decided.  This Court defers to the opinions of the Maryland Court of Appeals for the proper statement of Maryland law.

Consequently, the Court concludes that notice to the claims administrators constituted constructive notice, if that, to CX Re, and under *Poffenberger* and *Windesheim*, such notice was insufficient to start the statute of limitations running.  The Court, therefore, further concludes that Defendants are not entitled to summary judgment.

The other motion to be addressed in this opinion is CX Re's motion for leave to file a second amended complaint.  (ECF No. 30.)  Proposed amendments include the addition of Alfred Murray Slattery as a party defendant and a fraud claim against him; CX Re alleges Slattery served as Defendants' agent to procure the insurance policy at issue in the case.  (*Id.* ¶¶ 10-11.)  Additionally, CX Re seeks to add allegations responding to Defendants' arguments concerning when CX Re discovered the Defendants' misrepresentation.  (*Id.* ¶ 12.)  Defendants' opposition to this motion to amend is premised upon its flawed arguments as to when CX Re received notice of the lead-paint violations against Defendants.  Having concluded that notice to the claims administrators did not suffice as actual notice to CX Re under Maryland's discovery rule, the Court can discern no reason not to grant leave to amend.

## V. Conclusion

Defendants' motion for dismissal or, alternatively, for summary judgment will be denied and CX Re's motion for leave to file a second amended complaint will be granted.  A separate order follows.

DATED this 22nd day of November, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge