# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CX REINSURANCE COMPANY LTD., | * |
| Plaintiff | * |
| v. | *     CIVIL NO. JKB-15-3054 |
| LEADER REALTY COMPANY *et al.*, | * |
| Defendants | * |

## MEMORANDUM

Now pending before the Court is Intervenor Defendant Katiara Harper's Motion to Alter/Amend Judgment or Motion for Reconsideration. (ECF No. 135.) The motion has been briefed (ECF Nos. 136, 137), and no hearing is required, Local Rule 105.6 (D. Md. 2016). The motion will be granted. Also before the Court is the Joint Motion for Leave to File Surreply, filed by Plaintiff CX Reinsurance Company Limited ("CX Re") and Defendants Leader, Inc. d/b/a/ Leader Realty ("Leader") and Charles Piccinini (together, "Defendants"). (ECF No. 138.) The latter motion will be found moot based upon the Court's ruling in this memorandum and accompanying order.

This case began with CX Re's filing a complaint seeking rescission of the liability insurance policies issued by CX Re's predecessors to protect Defendants from financial loss stemming from claims made against Defendants by their tenants; besides rescission, CX Re sought a return to it of all sums paid under the policies, offset by premiums paid by Leader. (Compl. Prayer for Relief, ECF No. 1.) Alternatively, CX Re asked that the Court award CX Re

damages flowing from the allegedly fraudulent representations made by Defendants in their application for insurance coverage. (*Id.*)

The Court permitted Harper and another individual, Natasha Johnson, to come into the case as Intervenor Defendants. (Mem. & Order, Jan. 10, 2017, ECF No. 74.) Both Harper and Johnson filed answers to CX Re's complaint (ECF Nos. 75, 76), but Harper's included a counterclaim against CX Re and a cross-claim against Defendants (Harper's Ans., ECF No. 76). Harper's pleading sought a declaratory judgment that the insurance policies issued by CX Re to Defendants were enforceable and should not be rescinded. (*Id.*, p. 1.) After the case proceeded through discovery, CX Re and Defendants filed a joint motion to dismiss premised upon their settlement that, they asserted, rendered moot all claims in the case. (ECF No. 131.) The settlement agreement took the form of an "Endorsement Amending Policy Terms." (ECF No. 131-3.) The policies in issue—Policy No. CNAGL1112-97, Policy No. CNAGL1229-98, M&B Policy No. 19337608-99, and M&B Policy No. 19338040-00 (collectively, the "Policies")—were modified to limit the amount of insurance available for losses sustained during the four-year period the Policies were in effect. Since CX Re was thereby abandoning its quest to have the policies declared invalid and unenforceable and to recover compensatory damages from Defendants, the settlement agreement made moot CX Re's case against Defendants and the Intervenor Defendants. And since Harper's only claim was to have the Policies declared enforceable, it seemed to the Court that her claim was also mooted.

Upon reflection, the Court now believes its conclusion of mootness for Harper's claim was likely error. Consequently, the case shall be reopened, and the Court's dismissal order shall be vacated insofar as it disposed of Harper's claim because of mootness. However, in doing so, the Court deems it advisable to consider the nature of Harper's claim.

The scope of relief requested in Harper's claim indicates it should be dismissed without prejudice. In her prayer for relief, Harper asked the Court not only to declare the Policies valid and enforceable, but also to declare that "CX Re has an obligation to indemnify Defendants with respect to any judgment obtained by Defendant/Counter-Plaintiff against Defendants in the Lead Paint Action, as well as with respect to any other lead paint judgment obtained against Defendants by a claimant who has vested rights in the Policies." (Harper's Ans., Prayer for Relief.) Whether CX Re has an obligation to indemnify Defendants in the event Harper or anyone else obtains a judgment against Defendants cannot be declared yet. Such a declaration would depend upon the facts of the underlying suit(s) and a determination that those facts constitute an insured loss under the Policies' terms. To the Court's knowledge, Harper's case has not proceeded to judgment in Maryland state court. And Maryland courts frown upon a tort plaintiff's declaratory judgment action, prior to judgment in the underlying tort suit, that seeks a declaration of entitlement to liability insurance policy benefits.

"Under Maryland law, declaratory judgment actions by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally precluded except when the issues in the declaratory judgment action are independent and separable from the claims of the tort claim." *Washington Metro. Area Transit Auth. v. Queen*, 597 A.2d 423, 426 n.6 (Md. 1991). "[E]ven when declaratory judgment actions to determine coverage are permitted before a trial of the underlying tort action, they are not favored." *Vigilant Ins. Co. v. Luppino*, 723 A.2d 14, 20 (Md. 1999). *See also Chantel Associates v. Mt. Vernon*, 656 A.2d 779, 788 (Md. 1995) ("[I]t is within the trial court's discretion to defer resolution of an issue presented in a declaratory judgment action until the time of trial of the underlying tort action, even if that

issue is one which is 'independent and separable' from the issues to be resolved at the underlying tort trial.").

The discretionary nature of declaratory judgment actions in federal court is well established. "The Declaratory Judgment Act of 1934 . . . is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 788 (4th Cir. 2012). *See* 28 U.S.C. § 2201 ("any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). And although "this discretion should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937), the Court observes that the declination of such jurisdiction at this case's present juncture is consistent with the hesitancy of Maryland courts to jump ahead to insurance coverage questions raised by a tort plaintiff who has not yet obtained a judgment against the alleged tortfeasor, even if those questions include "independent and separable" ones from whether a loss is a covered loss under an insurance policy's terms. Whether the Policies are valid and enforceable may be considered independent and separable from the question of coverage, but the Court is not obligated to address that issue now. Instead, Harper may raise the matter after her underlying suit proceeds to judgment, presuming the judgment is in her favor. In addition, Harper is free to raise her claim to indemnification in state court; it need not be litigated here.[1] Thus, the Court concludes it appropriate to dismiss Harper's counterclaim and cross-claim without prejudice to her refiling her claim at a later time.

---

[1] Had CX Re's claims remained in the case, then it would have been appropriate to address Harper's request to have the Policies declared valid and enforceable. Even then, though, the Court would have declined to

Harper has also raised in her motion papers a new claim that CX Re and Defendants could not modify the Policies because of her asserted status as a third-party beneficiary. She also provides citations to some Maryland cases that suggest the Court's conclusion in *CX Reinsurance Co. Ltd. v. Levitas*, 207 F. Supp. 3d 566 (D. Md. 2016), *aff'd sub nom. CX Reinsurance Co. Ltd. v. Loyal*, 691 F. App'x 130 (4th Cir. June 6, 2017), that the intervenor defendant there was not an intended third-party beneficiary was in error.

Relying upon the principle that the primary source for determining the intention of contracting parties is the contract's own language, *see Shillman v. Hobstetter*, 241 A.2d 570, 576 (Md. 1968) (applying principle to question of whether party is third-party beneficiary), and relying upon the quite restrictive Maryland case law regarding third-party beneficiary status, *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 212 (Md. 2012), this Court concluded that the intervenor-defendant in *Levitas* was only an incidental beneficiary of the liability insurance policy CX Re issued to the *Levitas* defendants in relation to the rental properties they owned. That conclusion was based upon the insurance contract's own language, which provided no evidence that the insurer and the insureds intended to make the defendants' tenants primary parties in interest. The undersigned has now become aware that a sub-strain of third-party beneficiary law apparently exists in Maryland because of a judicially created qualification of the doctrine. That qualification seems to be based upon a public policy exception to contract interpretation when applied to liability insurance contracts. Under this apparent exception, the public policy requires that liability insurance contracts be interpreted as expressing the insurer's and the insured's intent to make any potential tort claimant against the insureds an intended third-party beneficiary, *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1103 & n.4, 1109 (Md.

---

address Harper's request to declare CX Re obligated to indemnify her because of that claim's prematurity. And, further, Harper's request to declare CX Re obligated to indemnify other, unnamed claimants would have been declined because it is unlikely she would have been able to establish standing to litigate such a question.

5

1999), even though the contract's language may not support such an inference. Thus, Harper in the instant case contends the Court's conclusion in *Levitas* was incorrect. She is probably right.[2]

However, the Court's conclusion in *Levitas* as to the intervenor-defendant's lack of third-party beneficiary status was dictum because it was an issue that related to the motion to dismiss and did not relate to the Court's disposition of the case through summary judgment. *See Bland v. Roberts*, 730 F.3d 368, 400 n.6 (4th Cir. 2013) ("Dictum is statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." (Internal quotation marks omitted.)). It should be noted that the Court also concluded in *Levitas* that, even if the intervenor-defendant could be considered a third-party beneficiary, she did not acquire any greater rights than the insured defendant; thus, if CX Re could validly claim a right to rescission because of the insured defendant's misrepresentation, the intervenor-defendant was subject to the same defense. Further, even if she could be considered a third-party beneficiary, her contention that, upon the occurrence of her injury, CX Re and the insured lost their ability to agree to vary the terms of the policy with respect to the intervenor-defendant's injury, was a principle that could not be applied to her because her claimed injury could not be considered an insured loss under the terms of the policy. Consequently, the Court was not presented with an intervenor-defendant who had an insured loss and who was able to claim a right to prevent the insurer's and the insured's agreed modification of the insurance

---

[2] Harper's counsel posits the Court's incorrect conclusion in *Levitas* was likely predicated on insufficient briefing. That is an understatement. Counsel for neither side alerted the Court in *Levitas* to the relevant authorities now cited by Harper's counsel, with the exception of *Travelers Ins. Co. v. Godsey*, 273 A.2d 431 (Md. 1971), which included only an unexplained reference to the notion that an injured plaintiff was a third-party beneficiary; *Godsey*, however, turned on the proposition that the tort claimant stood in the shoes of the insured tortfeasor and, consequently, her attempt to enforce her judgment that was obtained through her collusion with the insured was barred.

contract, under the aegis of comment *e* to Section 311 of the Restatement (Second) of Contracts, even presuming that Maryland courts would apply that principle.

Regardless, Harper's new claim regarding modification of the Policies is not a cognizable issue before the Court in this case. Based on the pleadings here, the sole permissible issue joined by Harper's counterclaim and cross-claim and answers thereto was the validity and enforceability of the insurance policies. Only in Harper's motion to alter or amend the judgment has the issue of modification been raised, but her motion papers are not an adequate substitute for a duly filed complaint. Further, Harper concedes it is a question of first impression in Maryland law since "Maryland's appellate courts have not yet applied Restatement Section 311 in this context . . . ." (Harper's Mot. Alter Supp. Mem. 22, ECF No. 135-1.) Thus, even if the question were properly before the Court, it would require certification to the Court of Appeals of Maryland for resolution. Although Harper could advance such a claim in this Court in a new case, it could also be raised in the first instance in a suit in Maryland state court, where it ultimately must be resolved.

Therefore, the Court concludes Harper's motion has merit and should be granted. Her claim, however, shall be dismissed without prejudice. A separate order shall issue.

DATED this 30th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge